JAMES H. DEVLIN, JR., administrator with the will annexed,
*vs.* MARY HOUGHTON.

Suffolk.    January 19, 1909. — May 20, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Contract,* Implied in law.   *Fraud.   Undue Influence.   Conversion.*

At the trial of an action by an administrator for money had and received by the
defendant from the deceased person, the plaintiff introduced in evidence interrog-
atories which he had propounded to the defendant under R. L. c. 173, § 57, and the
defendant's answers thereto, from which it appeared that the defendant had
received from the deceased person both money and orders upon banks for money
which he cashed during the lifetime of the deceased person, but the defendant
did not state in his answers why or under what circumstances he received them.
Without there being any evidence that the deceased person intended the money
to be either a gift to the defendant or a payment to him in satisfaction of a debt,
the defendant rested at the close of the plaintiff's evidence, and the presiding
judge ordered a verdict for him.   *Held,* that the verdict should not have been
ordered, since there was evidence from which the jury might have found that
the money was received by the defendant to the use of the deceased person.

The evidence at a trial tended to show that M., an unmarried woman, had lived
with her brother until his death in June, 1902, in a three tenement house which
she owned in the north end in Boston, that at that time she was seventy-one
years of age and after that time until July, 1904, had lived alone, being bed-
ridden with cancer of the breast after March, 1903, that she did not care for her
relatives and that they had nothing to do with her, that in April, 1903, she
made a will giving all her property to a certain church; that one H., a woman,
constantly urged, "had her tormented to death," to sell her house, that much
against her will she sold her house in July, 1904, the transaction being carried
through in H.'s absence by H.'s son in law and a person who might have been
found to have been acting as H.'s attorney both at that time and in subsequent
litigation regarding the matter, that M. felt very badly at leaving the house
and was moved to H.'s house by H.'s husband in an unkind manner two weeks
after the sale, that at H.'s house M. grew rapidly worse; that on September 7,
1904, H. procured from M. orders for $8,300 which M. had in certain banks and
procured the money; that on September 29 H. took persons who were calling
upon M. aside and inquired of them what M. was going to do with her money,
and on being told the disposition provided for in the will, stated "I do not
think that is right. . . . If that is the case, let her get a trained nurse," that on
October 8, M., calling for her pocket book in H.'s presence, kept possession of
it, that M. died on October 10, 1904, from exhaustion produced by cancer of the
breast from which she had been suffering for four years, that repeatedly after
she went to H.'s house she had emphatically stated that her property was to
"go to the church," but signified that she did not wish to talk of the matter in
H.'s presence, that, after the death of M., H. stated that she had given her a

present of $1,000. *Held,* that there was evidence from which a jury would have been warranted in finding that H. wrongfully obtained money of M. in her lifetime, for which M.'s administrator had a right of action after M.'s death.

TORT by the administrator with the will annexed of Ellen McLaughlin for the conversion of $9,000 "or thereabouts" which, it was alleged in the declaration, the defendant "wrongfully, tortiously and by means of the exercise of undue influence obtained from the plaintiff's testatrix . . . and converted to her own use." Writ in the Superior Court for the county of Suffolk dated May 4, 1905.

The case was tried before *Bond,* J. The interrogatories and the answers to them, referred to in the opinion, were as follows:

" Q. What sum of money did you receive from the plaintiff's testatrix on or about the 7th day of September, A. D. 1904? A. About $8,300.

" Q. What order or orders and on what savings bank or other banking institution for the payment to you of money deposited in the name of the plaintiff's testatrix or of any person for her did you receive on or about the 7th day of September A. D. 1904? A. I received the following orders: — One on the Suffolk Savings Bank, and one on the Provident Institution for Savings, and two checks on the United States Trust Company.

" Q. State the specific amounts of money you collected on said orders and name the institution from which you received the same. A. I received about $6,800 from the United States Trust Company, about $400 from the Provident Institution for Savings and about $1,100 from the Suffolk Savings Bank.

" Q. State what transfers if any were made of accounts in banking institutions from the name of the plaintiff's testatrix to your name or that of any person for you or designated by you? A. There were no transfers made in any banking institution from the name of the plaintiff's testatrix to my name or that of any person designated by me.

" Q. State the sum total of money which you received from the plaintiff's testatrix? A. As stated in one answer."

Other facts are stated in the opinion. At the close of the plaintiff's evidence, the presiding judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*E. V. Grabill,* (*J. J. Corbett* with him,) for the plaintiff.

*G. R. Swasey,* (*J. F. Sullivan & W. P. Thompson* with him,) for the defendant.

LORING, J. This was an action of tort in which the plaintiff declared for the conversion of "nine thousand dollars or thereabouts." The defendant rested on the plaintiff's evidence and asked the judge to direct the jury to return a verdict in her favor. "During the course of the arguments objection was made by the defendant to the form of the action. Thereupon the plaintiff's counsel stated his willingness to amend. The court ruled that the plaintiff could not recover and directed a verdict for the defendant. The ruling was made without regard to the form of the declaration." The case comes before us on an exception to this ruling.

The learned counsel for the defendant conceded at the argument that the ruling made was a ruling that the defendant was not liable to the plaintiff in an action at law. The case therefore may be taken to stand where it would stand were the writ a writ in tort or contract and a count for money had and received were inserted in the declaration.

It was contended in support of the ruling made by the presiding judge that the plaintiff must make out a case of fraud or undue influence, for the law will assume at the outset that the defendant has the $8,300 rightfully.

Doubtless the law puts on the plaintiff the burden of proving that the $8,300 was the money of the testatrix. But when that was proved, a case of money had and received was made out without proof of fraud or undue influence. The plaintiff proved that the $8,300 was the money of the testatrix when he proved that the defendant received it from her. That he proved by her answers to the interrogatories filed by him.

All that the plaintiff asked the defendant in the interrogatories filed by him was: "What sum of money" she received from the testatrix on or about September 7, 1904. The defendant answered: "About $8,300." In answer to further interrogatories the defendant stated that on September 7 she received an order on the Suffolk Savings Bank, an order on the Provident Institution for Savings, and two checks on the United States Trust Company; and received about $6,800 from the United

States Trust Company, about $400 from the Provident Institution for Savings, about $1,100 from the Suffolk Savings Bank.

It is to be noted that although the defendant had the right under R. L. c. 173, § 60, to introduce into her answer any matter relevant to the issue to which the interrogatory answered related, she did not state how she came to "receive" the $8,300 which she did "receive." She did not state that it was received for value rendered to the testatrix, or that it was a gift from the testatrix to her.

This made out a case of money had and received by the defendant to the plaintiff's use. On these answers the jury were warranted in finding that the $8,300 which the defendant obtained from the Institution for Savings and the trust company were handed by her to the testatrix and then handed by the testatrix to the defendant. But a case of money had and received was made out even if that is not so. Where property belonging to the plaintiff has been reduced to money after it was received by the defendant but before the action is brought, money had and received lies. *McCabe* v. *Maguire*, 182 Mass. 255. *Hagar* v. *Norton*, 188 Mass. 47.

The case must go back for a new trial, and for that reason we think it proper to consider the question which has been fully argued, namely, whether the jury were warranted in finding that the defendant wrongfully obtained the $8,300, or the orders and checks by which she obtained the $8,300.

It appeared that the testatrix, being then seventy-three years of age, died on October 10, 1904, from exhaustion produced by cancer of the breast from which she had been suffering for four years.

The testatrix was a spinster and had been a cook in early life. For many years before July, 1904, (the July next preceding the October in which she died,) she had lived at 11 Cooper Street in the north end of Boston. Until June, 1902, her brother had lived with her. Her brother died at that time, and since then, until July, 1904, when the house was sold, she had lived alone. The house No. 11 Cooper Street contained three tenements. The testatrix lived in the lower tenement and let the two upper ones.

Her nearest relatives were two grand nephews and a grand

niece.   The jury would have been justified in finding that she did not care for them and that they had nothing to do with her. In March, 1903, she became bedridden.   From March, 1903, to June of that year she was taken care of by Grace Sullivan ; from June, 1903, to the middle of November, by Josephine Gilman ; and from November, 1903, to July, 1904, by Densy Gaddis, all of whom testified for the plaintiff.

In April, 1903, she made a will leaving all her property to the pastor of St. Mary's Church, for masses for the repose of her soul and of those of the deceased members of her family.   St. Mary's Church was the parish church for the district in which she lived, and the church where she had been in the habit of worshipping.   The jury would have been warranted in finding that the testatrix always had intended that her property should go to the church, and that she continued to be of that mind until she died.

For some time before July, 1904, the defendant, who seems to have been a friend of the testatrix, had been urging her to sell her house 11 Cooper Street.   Grace Sullivan testified : " The defendant Mrs. Houghton called there once or twice a week while I was there.   Mrs. Gilman — Josephine Houghton at that time — succeeded me in caring for Miss McLaughlin. While she was there my mother and I called two or three times a week and would run up on Saturdays.   Mrs. Gilman was followed in the care of Miss McLaughlin by Mrs. Gaddis, and while she was there mother and I called as before.   At the time Miss McLaughlin said she did not want to sell her house, that she wanted to stay there as long as she lived, that Mrs. Houghton, the defendant, was down there and asking her if she was going to sell her house and telling her she knew of different ones who were willing to buy it if she wanted to sell it, that Mrs. Houghton had her tormented to death to sell her house. Miss McLaughlin said this to me at different times when I called there before the house was sold.   The house was sold in July, 1904."   The same witness testified that one Budrow, the defendant's son in law, and one Sullivan, came in while she was calling on the testatrix in July, 1904.   The defendant's answer in this case is signed by one Sullivan.   When Budrow and Sullivan came in, Budrow " told her [the testatrix] that

he had sold the house and got the deed for the sale of the house and wanted her signature; and Mr. Budrow said he had carried out her affairs just the same ' as if Mamma Houghton was there and we have put the money in the bank and I brought $300 down here; I guess that will be money enough for you to have in the house to pay any little bills there may be.' " The testatrix then signed the deed and the son in law and Sullivan left. Whereupon the testatrix said: "'He is very smart, but when I get a little better I will fix my affairs to suit myself." The purchaser then notified the testatrix to leave in two weeks.

The witness's testimony then continued as follows: " Before leaving the house Miss McLaughlin sat on a chair and cried and said she did not want to leave the house. Mr. Houghton, the defendant's husband, said to my mother ' Hurry up, Laura, get her up to the house and I will pay you well for it.' My mother said ' What do you mean ? I'm not here for pay.' He then walked away and did not say anything more."

On the 29th of September (twenty-two days after Mrs. Houghton received the $8,300), the same witness with her mother called on the testatrix at Mrs. Houghton's. This witness testified as follows: " While we were calling there, my mother asked Miss McLaughlin if she had changed her will and she said, ' No, no, no ; Why should I ? The money that I have worked hard for is going to St. Mary's Church.' Just then Mrs. Houghton came through the hall and Miss McLaughlin put her fingers on her mouth and shook her head — told her not to say any more. I was present half an hour later on that day when Mrs. Houghton had a conversation with my mother. As we were in the hall leaving the house, she asked mother to step in to the parlor and said, ' Mrs. Sullivan, what do you think Ellen is going to do with her money ? ' Mother said ' She has made a will and left her money to St. Mary's Church.' ' Well,' Mrs. Houghton said, ' I don't think that is right. Do you ? ' Mother said, ' I think she has a right to leave the money she has worked hard for wherever she wants to,' and then Mrs. Houghton said, ' If that is the case, let her get a trained nurse.' "

The mother of the last witness called on the testatrix two days before she died. Her testimony as to this visit was as follows: " I called and asked Mrs. Houghton if I could see

Miss McLaughlin, she said she was dosing, but I said I would like to see her because I was in a hurry. So she brought me into the room and I stood down at the foot of the bed. Miss McLaughlin asked for her pocketbook. Mrs. Houghton's sister, Bridget Houghton, was standing there. (This is not the Bridget Houghton whose testimony is later set forth in the bill of exceptions.) Mrs. Houghton said 'Do you know what she is saying?' I said 'Yes, ma'am.' She said 'Why! she says to put the woman in black out of the room.' All three of us were dressed in black and I asked which one did she say. As a matter of fact, Miss McLaughlin did not say what Mrs. Houghton said she said, but asked for her pocketbook. Bridget Houghton (not the witness whose testimony is later set forth) handed it to her, and she put her hand on it right like that (illustrating)."

After the death of the testatrix but before the funeral, one Bridget Houghton (apparently no relation of the defendant) called, seemingly to see the body. She testified: "Mrs. Houghton asked me how I thought she looked, and said Ellen McLaughlin made her a present of $1,000 and that she was a great care. I said she was deserving of it."

We are of opinion that this evidence warranted a finding that the defendant conceived the idea of possessing herself of the property of the testatrix; that the defendant tormented the testatrix to sell her house when she did not wish to, because she (the defendant) could not secure for herself the house as easily as she could the purchase money for it. Her husband was not taking the testatrix to the defendant's house, and the defendant was not taking care of the testatrix out of kindness. The occurrences of September 28 and October 8 showed that the testatrix was afraid of the defendant; and in addition the defendant's actions and remarks on September 29 require explanation at least, if she did not have some ulterior motive in what she had done in the house and in the care she was taking of the testatrix. Lastly, the defendant made a statement about the matter which was not true; for, whatever may be found to be the fact, it is certain that the testatrix did not make a present of $1,000 to the defendant.

If the defendant did obtain for herself these goods in this way, a conversion during the lifetime of the testatrix was made

out, and that right of action passed on her death to the plaintiff as administrator with the will annexed. *Hagar* v. *Norton*, 188 Mass. 47.

*Exceptions sustained.*