JANE F. SMITH, executrix, *vs.* CATHERINE A. STRATTON & others.

Bristol.　October 24, 1938. — December 28, 1938.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Trust*, Constructive. *Probate Court*, Accounts. *Executor and Administrator*, Accounts. *Undue Influence.*

Evidence was admissible, at the hearing on an account of an executrix, that, by undue influence exerted by the accountant and her husband, certain savings bank accounts had been transferred by the decedent into a joint account of herself and the accountant, and that after the death the accountant had caused the accounts to be transferred to her

own name, such evidence tending to prove that the accountant held the accounts as constructive trustee and, under G. L. (Ter. Ed.) c. 206, § 4, warranting findings charging the executrix with the amount thereof.

Reported evidence did not show to be plainly wrong a finding that a transfer of savings bank books by an elderly woman into joint accounts in the names of herself and of a woman with whom she lived was procured by undue influence of that woman and her husband.

PETITION for the allowance of the first and final account of the executrix of the will of Johanna Driscoll, late of Westport, filed in the Probate Court for the county of Bristol on April 16, 1937.

From a decree, entered after a hearing by *Hitch*, J., the petitioner appealed.

*A. E. Seagrave*, (*A. E. Beaulieu* with him,) for the petitioner.

*D. Silverstein*, for the respondents.

DOLAN, J. This is an appeal by Jane F. Smith from a decree entered in the Probate Court upon her petition for allowance of what is described as her "first and final account" as executrix of the will of Johanna Driscoll.

Objection was made to the allowance of the account by two sisters of the petitioner, who were given legacies of $500 each under the terms of the will of the testatrix.

After hearing, the judge entered a decree charging the petitioner, in schedule A, with the amount of three deposits in savings banks, which at one time stood in the name of the testatrix but were transferred into her name and that of the petitioner in joint account on October 13, 1933, and subsequently withdrawn by the petitioner. The judge made a finding in the decree that the transfer of those deposits into joint account had been procured to be made by the undue influence of the petitioner and her husband, Joseph Smith. He further decreed that four items, in schedule B of the account as rendered, showing payments of legacies, should be allowed only as payments on account. The decree established a balance of $9,798.81 in the hands of the petitioner as executrix, instead of nothing shown by the account as rendered.

The petitioner appealed, and her counsel has contended that at the hearing in the Probate Court evidence was

improperly admitted that attacked, on the ground of undue influence, the transfers of savings bank deposits made prior to the death of the deceased.

It is settled by what is said in *Cook* v. *Howe*, 280 Mass. 325, that this contention cannot be sustained. It is established that if, as found in the instant case, the transfers of the deposits in question, which were subsequently withdrawn by the petitioner to her own use, were procured to be made through undue influence exercised upon the testatrix by the petitioner, she would hold the proceeds as trustee thereof for the benefit of the testatrix and her estate upon a constructive trust, and that, except for the fact that the petitioner is the executrix of the will of the testatrix, the proceeds could be recovered by a personal representative of the testatrix in an action at law. See *Devlin* v. *Houghton*, 202 Mass. 75. The petitioner could not sue herself in an action at law. Where the same person has in one capacity a duty to pursue a claim against himself in another capacity resort must be had to a suit in equity. *Bemis* v. *Converse*, 246 Mass. 131, 135. The proceeding in the Probate Court upon the account of the petitioner is deemed to be a proceeding in equity. G. L. (Ter. Ed.) c. 206, § 4; c. 215, § 2.

The evidence bearing on the question of the transfer of the deposits involved was properly admitted.

The petitioner has also argued that, if this evidence was properly before the court, there was not a sufficient basis for the finding that the transfers involved were procured by undue influence exercised upon the testatrix.

A stenographer was appointed to take the evidence under the provisions of G. L. (Ter. Ed.) c. 215, § 18, and, at the request of the petitioner, the judge made a report of the material facts found by him. G. L. (Ter. Ed.) c. 215, § 11. Accordingly, all questions of fact, discretion and law presented by the record are open on the appeal. In dealing with questions of fact we weigh the reported evidence, giving due weight to the findings of fact made by the judge upon oral conflicting testimony, but we do not reverse such findings unless we are convinced that they are plainly

wrong. *Trade Mutual Liability Ins. Co.* v. *Peters*, 291 Mass. 79, 84, and cases cited. *Buckley* v. *Buckley*, 301 Mass. 530. An examination of the evidence and of the subsidiary facts found by the judge does not convince us that his ultimate, finding, that the transfers of the deposits in question were procured to be made by· the testatrix through the undue influence of the petitioner and her husband, is plainly wrong.

A recital of the evidence would add nothing to our jurisprudence. We think it will suffice to say that the evidence would warrant a finding of the following facts, most of which are in substance set forth by the judge in his report of material facts.

The deceased was an elderly woman. She was unmarried and had been employed as a servant for many years. She had accumulated some money. She was intimate for a long time with the petitioner, who lived in Westport, and with the latter's sisters, Mrs. Bridgewater and Mrs. Stratton, who both lived in Newport. None of them is related to the deceased, who stayed at different times with them. Prior to July 7, 1933, she had given up her work and was staying with Mrs. Bridgewater in Newport. On that date she went to the home of the petitioner and while there broke her hip on August 3, 1933. The husband of the petitioner was then employed by a Fall River attorney at law as chauffeur, and he asked this attorney to draw a will for the deceased. The attorney did so and it was executed by the deceased on August 5, 1933. In that will $500 was given to Mrs. Stratton, the same amount to Mrs. Bridgewater, $1,000 to the Sisters of the Holy Union of the Sacred Heart Church and $100 to a priest for masses. The residue was bequeathed to the petitioner. The attorney who drew the will was named as executor. The deceased was taken to a hospital on August 16, 1933, but became "dissatisfied," insisted upon leaving, and the petitioner "took her to her home. There she was confined to her bed and was in considerable pain part of the time and was given some quieting medicine by the doctor . . . Mrs. Bridgewater called upon her often and Mrs. Stratton some."

There was evidence that while in the hospital the testatrix told Mrs. Bridgewater that she was in great trouble, that the petitioner and her husband "wanted her to leave the hospital and go to their home as it was costing her too much at the hospital and . . . [that] she was unable to leave that day" as the "doctor ordered her not to leave the hospital . . . ." She also said at the same time: "I also am having trouble with them about my will. They want me to make another will . . . ."

In October of 1933 the husband of the petitioner asked his employer, the attorney before referred to, "if it would not be possible to have Miss Driscoll transfer the accounts in the savings banks into a joint account for the purpose of avoiding taxes." The lawyer replied that "it might be possible but he would have nothing to do with it." Shortly thereafter the husband of the petitioner left the employ of this attorney.

The petitioner "told the testatrix that she would have to see . . . [this attorney] to draw the money from the banks because he was administrator, and . . . [the testatrix] said she did not want him to draw the money." The petitioner "knew that she could draw money out on an order but did not tell . . . [the testatrix] so." The husband of the petitioner had some conversation with the testatrix about a young man named Beaulieu, who had passed the bar examination but who was not "sworn in" as a member of the bar until November 1, 1933. He had been in the habit of buying gasoline at a station conducted by the husband of the petitioner. The latter told Beaulieu that the testatrix would like to see him. Beaulieu called upon her and she told him that she had already made a will but that "she did not like the name of the executor." He advised her to make a new will rather than a codicil, and at her request he prepared one and she executed it on October 13, 1933. The only substantial change in this instrument from that previously executed was the substitution of the petitioner as executrix for the attorney named in the prior will. On October 11, 1933, the testatrix had signed orders, which Beaulieu had secured, direct-

ing the transfer of the savings deposits in question into her name and that of the petitioner in joint account. When the will was executed on October 13, 1933, Beaulieu told the testatrix that there might not be money enough to pay the legacies. She asked him what would happen in that event, and he replied that in that case "they will all have to share and divide." When the will was executed, the petitioner and her husband were not present, but the petitioner "did witness one of the orders given . . . Beaulieu for the purpose of transferring" one of the bank accounts.

After the transfer of the savings accounts involved, the testatrix had remaining a deposit of $2,375.79 in a fourth savings bank. The pecuniary legacies provided for in her will amounted to $2,106, leaving only $269.79 available for the expenses of her sickness and funeral and for charges of administration. In the account as rendered after such payments there remained for the legatees not more than approximately five per cent of the amount of their legacies as fixed in the will.

After the testatrix had left the hospital and while she was in the petitioner's home, she asked Mrs. Bridgewater to bring some of the sisters from a certain convent to see her. Mrs. Bridgewater asked the petitioner if it was all right to bring them. The latter replied, "Don't you dare to bring them," and her husband said, "Nothing doing there." The petitioner "also told Mrs. Stratton that if she brought the Sisters from the Convent to the house she would throw . . . [her] and the Sisters out."

The testatrix died on June 16, 1934. Subsequently the petitioner said to her sisters "that she was afraid there was going to be trouble, that she had an awful time with . . . [the testatrix] to get her to do it"; and the husband of the petitioner said, "If we hadn't done it none of you would have got anything. The Sisters at the Convent and St. Anne's would have got it all." The judge found specifically that the testatrix was deeply religious and "it is inconceivable that she would want the money, particularly for the payment of Masses, cut down."

Contrary to what has been urged by the petitioner in argument, we are of opinion that the evidence fully supported the subsidiary and ultimate findings of the judge, upon which the decree appealed from is based. The evidence discloses far more than mere opportunity on the part of the petitioner and her husband to exercise undue influence upon the testatrix in connection with the transfer of the savings accounts, and, we think, warrants a finding that those transactions resulted from a preconceived idea on the part of the petitioner, aided by her husband, of possessing herself of the major part of the property of the testatrix in her lifetime, even to the extent of making impossible of fulfilment the terms of the prior will of the testatrix, and, what is more significant, the terms of the last will which was made two days after the execution of the orders of transfer but which was then in the course of preparation. This is supported by evidence that the testatrix was having trouble with the petitioner and her husband about her will, that they wanted her "to make another will," and by the facts that the new will made no substantial changes from the terms of the prior will except to name the petitioner executrix thereof, that the transfers gave control to the petitioner of the greater portion of the testatrix's property in her lifetime, and that the will secured to the petitioner the administration of the remaining property after the death of the testatrix. That there was active undue influence exercised by the petitioner and her husband is further evidenced by the petitioner's admissions and those of her husband after the death of the deceased, by their refusal to permit her to be visited by the "Sisters at the Convent," and by threats made that in such event they would "throw" them out. In its facts the instant case has many points of resemblance to the facts considered in *Devlin* v. *Houghton*, 202 Mass. 75, and is largely governed by what is said there. The finding of the trial judge that the transfers of the savings accounts were procured to be made through the exercise of undue influence upon the testatrix by the petitioner and her husband was not plainly wrong. The decree of the Probate Court is

affirmed.   Costs and expenses of the appeal are to be allowed the respondents or their counsel in the discretion of the Probate Court.

*Ordered accordingly.*