THE MERCHANTS NATIONAL BANK OF BOSTON & another, executors, *vs.* THE MERCHANTS NATIONAL BANK OF BOSTON & another, trustees, & others.

Worcester. March 7, 1945. — September 18, 1945.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Taxation,* Apportionment of tax burden, Federal estate tax. *Constitutional Law,* Due process of law, Equal protection of laws, Taxation, Obligation of contracts, Separation of powers of government. *Executor and Administrator,* Taxes. *Statute,* Retroactive. *Devise and Legacy,* Apportionment of tax burden. *Equity Jurisdiction,* Suit by fiduciary against himself in another capacity.

A petition on the probate side of a Probate Court was dismissed, and relief was granted under a petition in equity containing the same averments and seeking the same relief, where the relief was sought by persons in one capacity against others and also against themselves in a different capacity.

Under the new §§ 5, 5A, 5B, inserted in G. L. (Ter. Ed.) c. 65A by St. 1943, c. 519, § 1, and under § 2 of said c. 519, a Probate Court might, without violation of the due process clause or the equal protection of laws clause of the Fourteenth Amendment to the Constitution of the United States or of art. 30 of the Declaration of Rights, and without impairment of contractual obligations, direct that a proper apportionment and proration be made of the amount of a deficiency Federal estate tax, assessed upon the estate of one who had died testate before the effective date of said c. 519 and paid by the executor after that date, and that the executor be reimbursed by the trustee of an inter vivos trust established by the testator, the property of which was undistributed at the time of such payment and properly had been included in the estate for the purpose of assessing the tax, and by the recipient of insurance money paid by reason of the death of the decedent before the payment of the tax and also properly included in the estate for such assessment, where it appeared that there was no provision "otherwise" in the will or in the instrument establishing the inter vivos trust or in the insurance policy.

No part of a deficiency Federal estate tax paid by an executor after the effective date of St. 1943, c. 519, § 1, should be apportioned, under §§ 5, 5A, 5B, inserted thereby in G. L. (Ter. Ed.) c. 65A, to the trustee of a trust of timberlands created by the testator's will, where the terms of the will relieved such trust of all expenses of maintenance and placed them upon the residuary estate and thus provided "otherwise" within the statute.

Two PETITIONS, filed in the Probate Court for the county of Worcester on March 27, 1944, by the executors of the will of George C. Beals, late of Winchendon.

The cases here heard and reports to this court were made by *Atwood*, J.

In this court the cases were argued at the bar in March, 1945, before *Field*, C.J., *Lummus, Dolan, Ronan*, & *Spalding*, JJ., and afterwards were submitted on briefs to all the Justices.

*G. Newhall*, stated the case.

*F. G. Goodale*, (*C. Y. Wadsworth* with him,) for the trustees under an instrument of trust for the benefit of Philip C. Beals, and another.

*E. C. Parks*, (*F. C. Hession* with him,) for the trustees under the eighth clause of the will of George C. Beals, and others.

*J. G. Palfrey* & *C. F. Albert*, for the trustees under the fifth clause of the will of George C. Beals.

RONAN, J. These are two petitions brought in the Probate Court of Worcester County by The Merchants National Bank of Boston and Philip C. Beals, as executors of the will of George C. Beals, seeking the apportionment under G. L. (Ter. Ed.) c. 65A, §§ 5, 5A, 5B, inserted by St. 1943, c. 519, § 1, of that part of the Federal estate tax paid by them on October 11, 1943. The respondents The Merchants National Bank of Boston and Philip C. Beals are the trustees of the trust established by the fifth clause of the will and are the trustees of another trust created by the eighth clause of the will, and are also the executors under the will of Edith J. Beals, who was the widow of the testator. The respondents John W. Marno and Philip C. Beals are the trustees under a declaration of trust executed by George C. Beals under date of July 31, 1935. The remaining respondents are the said Philip C. Beals individually, the President and Fellows of Harvard College and the Attorney General. One petition is in equity and the other is a general petition brought on the probate side of the court. Both petitions make the same allegations and seek the same relief. After ordering the demurrers to the petition in equity over-

ruled and the motions to dismiss the probate petition denied, the judge reported both orders to this court.

The petitioners in each of the petitions were also respondents in various representative capacities. Where the same persons in one capacity have a duty to perform in enforcing a claim against others and themselves but in a different capacity, an action at law will not lie but resort must be had to a suit or petition in equity. *Pratt* v. *Dean,* 246 Mass. 300. *Johnson* v. *Johnson,* 300 Mass. 24. *Smith* v. *Stratton,* 302 Mass. 17. *Dansereau* v. *Dansereau, ante,* 363. We shall consider the petition in equity and dismiss the general probate petition.

The petition in equity alleges that George C. Beals executed his will on April 18, 1939, and died on September 8, 1940. The will was allowed on October 16, 1940. By the fifth clause of the will, the rest and residue of the estate with the exception of certain timberlands was put in trust primarily for the benefit of Edith J. Beals, his widow, and Philip C. Beals, his son, with a contingent remainder to certain charitable uses. Certain timberlands, located in New England and in Virginia, were devised in trust by the eighth clause of the will. The will gave directions to the trustees as to the upkeep of these lands and the marketing of the timber on a sound annual basis so that the timberlands should be "a perpetual timber forest with an annual crop and continually renewed." The management of the timberlands was to be turned over to Philip C. Beals after he became twenty-two years of age if he showed an active interest in them, and the trustees were to furnish him with the necessary funds to care for them. They were to be conveyed to him free from trust when he became thirty years of age if he was still interested in maintaining the timberlands, otherwise they were to become a part of the residuary trust. It is also alleged in the petition that the testator by a declaration of trust dated July 31, 1935, created a trust known as the Philip C. Beals Trust. Shares of stock representing the controlling interests in two corporations were transferred by the testator to himself as trustee, and the income was payable to his son Philip C.

Beals. Provision was also made for the payment of a part of the corporate earnings to certain employees. The trust was irrevocable, and the testator provided for the appointment of the trustees who were to succeed him at his death. His son Philip C. Beals, having become twenty-one years of age a few weeks after his father's death, became one of the trustees in accordance with the terms of the trust. The testator expressed a hope that his son would ultimately take charge of the business of both of these corporations, and the trust was to terminate and the trust property was to be transferred to him at any time after he became thirty years of age if he showed an aptitude for and an interest in the business. The trustees were given broad powers with reference to the sale of trust property, the investment of funds and the apportionment between capital and income, but they were not to dispose of any of the shares of stock in either corporation unless they disposed of all the shares in that corporation.

The petition further alleged that all the legacies bequeathed in the first five clauses of the will were paid before January 1, 1943, and that neither the will nor the declaration of trust contained any express provision with reference to the payment of the Federal estate tax. The executors on December 8, 1941, paid an estimated Federal estate tax of $206,000, and on October 11, 1943, paid a deficiency tax of $216,994.49. The Federal estate tax was computed by including in the gross estate the assets in the Philip C. Beals Trust at a valuation of $741,573.13, the timberlands trust at a valuation of $62,867, and an item originally listed in the return as life insurance payable to the decedent's wife amounting to $40,094.84 but which was not life insurance within the Federal estate tax law. It is also alleged that the insurance company paid this sum to Mrs. Beals; that she died testate August 16, 1941; that her estate has not been completely settled; and that her executors have ample assets to pay any part of the Federal estate tax that they may be ordered to pay. The petition prays for an apportionment of the said tax of $216,994.49 among the parties respondent in accordance

with the provisions of G. L. (Ter. Ed.) c. 65A, §§ 5, 5A, and 5B, inserted by St. 1943, c. 519, § 1, and for appropriate decrees ordering them to pay the petitioners the amounts for which they may be found liable, together with interest from October 11, 1943.

The statute, St. 1943, c. 519, § 1, amended G. L. (Ter. Ed.) c. 65A by striking out § 5 and inserting in place thereof three new sections, 5, 5A and 5B. The new § 5 provided that "Whenever it appears upon any accounting, or in any appropriate action or proceeding, that an executor, administrator, trustee or other person acting in a fiduciary capacity, has paid . . . an estate tax levied or assessed . . . under the provisions of any estate tax law of the United States . . . upon or with respect to any property required to be included in the gross estate of a decedent under the provisions of any such law, the amount of the tax so paid or payable, except as otherwise directed or provided in the decedent's will, and, where all or part of a fund created by written instrument executed inter vivos is included in the gross estate, except as otherwise provided in such written instrument, or amendment thereof, shall be equitably apportioned and prorated among the persons interested in the estate." The apportionment shall be made in the ratio that the value of the property received bears to the total value of all the property received by "all such persons interested in the estate; provided, that it shall accord with applicable estate tax laws of the United States where such laws specify with respect to an apportionment." Provisions are made for deductions and exemptions in making the apportionment. The "persons interested in the estate" are those "who may be entitled to receive or who have received any property or interest which is so required to be included in the gross estate of a decedent, or any benefit whatsoever with respect to any such property or interest." Section 5A provides for the payment to the executor or administrator of the proportionate amount of the tax from those who received property included in the gross estate and which did not come into the possession of the executor or administrator. By § 5B the Probate Court having juris-

diction of the estate of a decedent is given jurisdiction to make the apportionment, to determine the amounts thereof and to make appropriate decrees. Statute 1943, c. 519, § 2, provides that this chapter "shall not apply to amounts paid as estate taxes nor to distributions made by an administrator, executor or trustee before" the effective date of the chapter. This chapter became operative on September 9, 1943.

The trustees of the residuary trust join with the petitioners in seeking the application of the apportionment statute, but the remaining respondent trustees and executors and the respondent Philip C. Beals individually contend on various grounds that the entire burden of the Federal estate tax falls upon the residuary estate and that no part of this burden can be shifted upon them.

It is contended that the phraseology of the apportionment statute shows that it was not intended to apply to the estates of decedents who died prior to its enactment. The broad and general language of St. 1943, c. 519, § 1, especially that portion which now appears as the new § 5 of G. L. (Ter. Ed.) c. 65A, providing for an apportionment of the Federal estate tax, when it appears that a fiduciary has paid this tax, does not in terms or by reasonable implication limit the application of this section to the estates of those who died subsequently to its enactment. This section plainly designates the facts, the existence of which will call for the operation of the statute. It makes no distinction between the estates of those who died after the effective date of its enactment and the estates of those who died before such date, provided the estates of the latter are still in the course of administration. Furthermore, § 2 of said c. 519 brings all estates in which administration is pending within the sweep of the chapter, excepting only those in which the Federal estate tax has been paid before the effective date of the chapter. To construe the chapter as applying only to the estates of those who died subsequently to the effective date of this chapter would render § 2 meaningless. The words of § 2 cannot be disregarded in ascertaining the legislative purpose in enacting the chapter of which

this section is a part. *Commissioners of Public Works* v. *Cities Service Oil Co.* 308 Mass. 349. *Tilton* v. *Haverhill*, 311 Mass. 572. *Nichols* v. *Commissioner of Corporations & Taxation*, 314 Mass. 285. An apportionment statute couched in somewhat similar terms was applied to an estate of a decedent who died before its enactment but whose estate was then in the course of administration. *Jeffery's Estate*, 333 Penn. St. 15.

The Federal estate tax was imposed upon the transfer of the decedent's property at the time of his death. It was a single tax which was measured by the aggregate of the property passing under his will and under the inter vivos trust and the money paid by the insurance company to his widow, less certain deductions and exemptions. The propriety of the inclusion of the property of this trust and the money from the insurance company in the gross estate of the decedent for the purpose of computing this tax is not questioned. The tax was to be paid before the distribution of the estate and, if not paid by the executors, those to whom the property was transferred were personally liable for their share of the tax. Besides, the payment of the tax was secured by a lien upon all the property included in the gross estate, with certain exceptions not now material. The chief aim of the Federal government was the collection of the tax. The taxing act gives little attention to the distribution of the burden of the tax. At the time of the death of the decedent, the only provisions it contained relative to the ultimate burden of the tax were (1) a provision for the reimbursement of the executor for that part of the tax computed upon the amount of life insurance on the life of the decedent in excess of $40,000 which has been paid otherwise than to the estate, and (2) a provision for the reimbursement of one other than the executor who had paid more than his share of the tax. U. S. C. (1940 ed.) Title 26, § 826 (b) (c). See now, as to the proceeds of insurance, U. S. C. (1940 ed.) Sup. IV, Title 26, § 826 (c). See also U. S. C. (1940 ed.) Sup. IV, Title 26, § 826 (d), effective October 21, 1942, relative to apportionment with respect to property passing by the exercise or the failure to exercise, or the release of,

a power of appointment. Although testators under this Federal taxing act could direct the manner in which the burden of this tax was to be assumed, U. S. C. (1940 ed.) Title 26, § 826 (b), yet failures to give such directions, which in many cases might be thought to be due to inadvertence, have often resulted in the depletion or substantial reduction of residuary estates by using them to pay the Federal estate tax. Moreover, it was thought inequitable to compel a residuary legatee to bear the entire burden of a tax upon a transfer of property, much of which was received by persons other than the taxpayer, unless a testator so directed. In such instances, the apportionment statute, St. 1943, c. 519, provides for the distribution of the burden of the Federal tax in accordance with the benefits received by those to whom the property of the decedent has been transferred. This tax was increased in the present case by the inclusion of the property of the inter vivos trust and the money paid by the insurance company to the widow of the testator, and the result was a greater expenditure of the funds of the estate which was in the course of administration by the Probate Court. The State having jurisdiction over the estate of a decedent has the power to make further regulations, not inconsistent with the Federal taxing act, for the apportionment of this Federal tax. *Riggs* v. *Del Drago*, 317 U. S. 95. It is true that the *Riggs* case dealt with the apportionment of the tax among those who received property from the executor, but there is nothing in that decision indicating that a State may not also apportion the tax among those who received property in some manner other than under the will of a testator. The aim and object of our statute is the equitable distribution of the tax among all those who received property which was included in the gross estate for the purpose of computing the Federal tax. Under this statute those who received property not included in the probate estate of the decedent are not permitted to escape a just allocation of the tax burden. A statute having a similar object has been construed to extend the ultimate burden of the tax to those who took property upon which the tax was computed but which did not pass under the will.

*Matter of Scott,* 249 App. Div. (N. Y.) 542, affirmed 274 N. Y. 538, certiorari denied sub nomine *Northwestern Mutual Life Ins. Co.* v. *Central Hanover Bank & Trust Co.* 302 U. S. 721. *Matter of Clark,* 169 Misc. (N. Y.) 202. *Matter of Kaufman,* 170 Misc. (N. Y.) 436. *Matter of Ryle,* 170 Misc. (N. Y.) 450. *In re Graham's Estate,* 49 N. Y. Sup. (2d) 508. *Matter of Halle,* 183 Misc. (N. Y.) 858.

The trustees of the inter vivos trust and the executors of Mrs. Beals contend that the rights of the transferees of the trust property and the insurance money were finally settled at the time of the death of the testator, that under the law then prevailing the entire burden of this Federal tax fell upon the residuary estate, *Plunkett* v. *Old Colony Trust Co.* 233 Mass. 471; *Dexter* v. *Jackson,* 245 Mass. 333; *Bemis* v. *Converse,* 246 Mass. 131, and that, these transfers having been fully completed, a subsequent statute could not shift any burden of the tax upon them on account of these transfers. *Campbell* v. *Boston,* 290 Mass. 427. *Worcester* v. *Bennett,* 310 Mass. 400. *Bernhardt* v. *Atlantic Finance Corp.* 311 Mass. 183. It may be conceded that in one sense the apportionment statute operates retroactively because it reaches back to the transfers made at the death of the testator. If no such transfers had then occurred, there would have been nothing to which an apportionment of the tax could apply. It must, however, be noted that liability for an apportionment of the tax could not arise until the tax was paid, and that the last instalment of this tax — which is all that is sought to be apportioned — was not paid until after the apportionment statute had become effective. A taxing statute does not necessarily operate retroactively if the fact upon which the tax is laid occurs after the statute becomes operative, even though the antecedents of this fact antedated the statute. *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation,* 294 Mass. 551. *Klein* v. *United States,* 283 U. S. 231. *United States* v. *Jacobs,* 306 U. S. 363. A taxing statute that operates retroactively for not more than a reasonable period in the past does not for that reason alone violate any provision of the Federal or of the State Constitution. *Brink*

v. *Commissioner of Corporations & Taxation,* 299 Mass. 280, 282. *League* v. *Texas,* 184 U. S. 156, 161. *Billings* v. *United States,* 232 U. S. 261, 282. This principle has been frequently applied in taxing income earned prior to the enactment of a statute. *Cooper* v. *United States,* 280 U. S. 409. *United States* v. *Hudson,* 299 U. S. 498. *Welch* v. *Henry,* 305 U. S. 134. The liability of a trustee to pay an income tax under a law in force when the income was received may by a subsequent statute be shifted to the settlor. *Reinecke* v. *Smith,* 289 U. S. 172. *Burnet* v. *Wells,* 289 U. S. 670. Liability for a betterment tax may be created after the public improvement has been made but while the benefit continues, and one purchasing the premises after the improvement was made but before any tax was imposed is liable for the tax. *Seattle* v. *Kelleher,* 195 U. S. 351. *Phillip Wagner, Inc.* v. *Leser,* 239 U. S. 207.

The reasoning of our own decisions, although dealing with the imposition of a tax and not with the closely connected question of the ultimate burden of a tax, tends to support the application of the apportionment statute in the instant case. In *Attorney General* v. *Stone,* 209 Mass. 186, the law at the time of the testator's death required the executor to pay a tax on the value of the trust property at the date of death, but a new statute enacted before the time for distribution of the trust made the tax payable when the beneficiary came into the possession and enjoyment of the property, determined the amount of the tax by the valuation of the property at that time and placed the liability for the tax upon the beneficiary. The three changes made by this statute were considered by this court, and none of them was held to violate any constitutional rights of the defendant even though it appeared that the property had increased in value since the death of the testator. It was held that the statute "involves no infringement or impairment of vested rights . . .. It does not deny to the defendant the equal protection of the law; it applies the same rule to him as to all other persons in the same situation . . .. Nor is it unconstitutional because it applied only to cases in which a succession tax remained

unpaid" (pages 190–191).   In *Magee* v. *Commissioner of Corporations & Taxation*, 256 Mass. 512, a statute increasing the rate of the tax and making it retroactive to a date preceding the death of a testatrix was upheld when challenged on the ground that the rights of the beneficiaries became vested upon the death of the testatrix and that the statute deprived them of their property without due process of law and denied them equal protection of the law. To the same general effect see *Carpenter* v. *Pennsylvania*, 17 How. 456; *Orr* v. *Gilman*, 183 U. S. 278, 286; *Cahen* v. *Brewster*, 203 U. S. 543; *Chanler* v. *Kelsey*, 205 U. S. 466; *Moffitt* v. *Kelly*, 218 U. S. 400; *Montgomery* v. *Gilbertson*, 134 Iowa, 291; *Rosenburg* v. *Bouse*, 172 Md. 530, 535; *In re Fotheringham's Estate*, 183 Wash. 579, 587.   While these decisions relate to succession taxes, we do not consider that distinction decisive in the instant case.   Indeed, it was said in *United States* v. *Perkins*, 163 U. S. 625, 628, in speaking of a tax imposed on the right of a decedent to dispose of his property, that "it is not until it [the property] has yielded its contribution to the State that it becomes the property of the legatee."   An estate tax arises at the death of a decedent and a transfer of the property occurs at that time.   Death starts the property on its journey from the dead to the living but its course and direction are under the custody and control of the Probate Court, and a transfer of property can hardly be said to be effected until its recipients are determined and the title is lodged in them. The disposition of property by will or descent is not a natural right but is a privilege conferred by the State, which may impose such conditions as its Legislature may prescribe provided they are not in conflict with the Federal Constitution or that of the State.   *Brettun* v. *Fox*, 100 Mass. 234.   *Lavery* v. *Egan*, 143 Mass. 389.   *United States* v. *Perkins*, 163 U. S. 625.   *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283.   *Plummer* v. *Coler*, 178 U. S. 115. *Irving Trust Co.* v. *Day*, 314 U. S. 556.   The liability of the trustees of the inter vivos trust and that of the executors of Mrs. Beals to reimburse the executors of the testator became, on the payment of the tax, issues involved in

the administration of his estate. It is a general principle that one who has paid a tax which was assessed to him but upon whom the final burden of the tax is not cast may recover the amount paid from the person upon whom the final burden of the tax has been imposed. *Phinney* v. *Foster*, 189 Mass. 182, 188. *Callahan* v. *Broadway National Bank*, 286 Mass. 473, 476. If credits are due to the estate from third persons on account of the payment of the tax by the executors, then it is their duty to collect and account for them to the estate. See *Phillips* v. *McCandlish*, 239 Mass. 301; *Mitchell* v. *Weaver*, 242 Mass. 331; *Abbruzise* v. *Sposata*, 306 Mass. 151; *Walsh* v. *Mullen*, 314 Mass. 241. The apportionment of the tax among the beneficiaries under the inter vivos trust and the recipient of the insurance money, even after the death of the settlor and the insured, does not violate the due process clause of the Fourteenth Amendment to the Constitution of the United States any more than if the property which they received had been included in the probate estate of the testator. If it had been so included the apportionment of the tax, we think, would not have deprived the recipients of their property without due process of law. *Attorney General* v. *Stone*, 209 Mass. 186. *Magee* v. *Commissioner of Corporations & Taxation*, 256 Mass. 512. *Cahen* v. *Brewster*, 203 U. S. 543.

There was no violation of art. 30 of the Declaration of Rights of the Constitution of Massachusetts in conferring upon the Probate Court, as the apportionment statute, St. 1943, c. 519, § 1, does, jurisdiction to determine liability for a proportionate part of the tax arising out of a payment of the tax made subsequently to the statute. It was within the power of the Legislature to regulate the conservation, devolution and administration of estates, and to prescribe the rules of apportionment of the burden of the Federal estate tax and also of the Massachusetts estate tax and to make them applicable to estates then in the course of administration where, as here, neither the will nor the trust instrument contains any directions or provisions relative to the apportionment and where no previous judgment or decree adjudicating the liability of these respondents for

any part of the burden of this tax has been rendered in any proceedings in which these respondents were parties. *Mulligan* v. *Hilton,* 305 Mass. 5, 13. *New England Trust Co.* v. *Paine,* 317 Mass. 542. *Matter of Ryle,* 170 Misc. (N. Y.) 450, 453. See *Demorest* v. *City Bank Farmers Trust Co.* 321 U. S. 36, 48.

The apportionment statute, St. 1943, c. 519, limited as it is in the present case to allocating a part of the burden of the last instalment of the Federal tax among those to whom the estate had not then been distributed, does not impair any contractual rights of the beneficiaries of the inter vivos trust or such rights of the estate of Mrs. Beals. The fact that the trust instrument and the contracts of insurance antedated the enactment of the apportionment statute would not bar the operation of the statute with respect to a benefit received from the payment of the tax after the statute had become effective. In *Barwise* v. *Sheppard,* 299 U. S. 33, a lease of oil lands was made in 1925. The lease made no reference to the assumption of an excise tax on the production of oil, but a statute at that time imposed this tax upon the lessee. A statute enacted in 1933, providing for the equitable apportionment of this tax among all the parties interested in the lease, was held not to impair the terms of the lease or the rights of the lessor. See *Kehrer* v. *Stewart,* 197 U. S. 60, 70; *Lake Superior Consolidated Iron Mines* v. *Lord,* 271 U. S. 577, 581; *United States Trust Co.* v. *Helvering,* 307 U. S. 57; *McPhillips Manuf. Co.* v. *Curry,* 241 Ala. 366; *New York Rapid Transit Corp.* v. *New York,* 275 N. Y. 258. The instant case is distinguishable from *Nichols* v. *Coolidge,* 274 U. S. 531, and *Coolidge* v. *Long,* 282 U. S. 582, upon which the respondents rely. In both of those cases the settlor had divested himself of all interest in the trust property prior to his death, and there was nothing to which either an inheritance tax or a succession tax could apply. Here the trust property and the insurance money were properly included in the gross estate for the purposes of the tax, and the payment of the tax by the executors set in operation the apportionment statute as an incident to the tax on these two transfers.

The respondents the trustees of the inter vivos trust and the executors of Mrs. Beals are treated the same as all those to whom distribution had not been made before the payment of the tax. They cannot complain because the Legislature did not go farther and impose the burden of the tax on all who were to share the decedent's property, irrespective of whether they had received their share before or after the payment of the tax. We cannot pronounce the legislative judgment, confining the allocation of the tax to those who had not received their share of the estate, arbitrary or irrational. It may have been thought that the apportionment could not be constitutionally applied to those to whom distribution had been made and that, if it could, there would be administrative difficulties in collecting a part of the tax from them. Furthermore, it is to be noted that the exclusion of those who had received their share did not increase the amount of the tax that should be allocated to these respondents. The apportionment statute does not deprive them of equal protection of the law. *Mulligan* v. *Hilton,* 305 Mass. 5, 13. *Old Colony Railroad* v. *Assessors of Boston,* 309 Mass. 439, 446–449. *Carmichael* v. *Southern Coal & Coke Co.* 301 U. S. 495. *Whitney* v. *State Tax Commission of New York,* 309 U. S. 530.

There is nothing in St. 1943, c. 519, § 2, that takes the inter vivos trust and the receipt of the insurance money outside the scope of this statute. There has been no distribution of the trust — an event that could not occur until the testator's son became thirty years of age. The payment by the insurance company to Mrs. Beals was not a distribution by any fiduciary to a beneficiary within the meaning of this section. It was no more than the payment by a debtor to a creditor of an obligation which arose at the death of the testator. *John Hancock Mutual Life Ins. Co.* v. *Helvering,* 128 Fed. (2d) 745. *Commercial Trust Co.* v. *Thurber,* 136 N. J. Eq. 471.

There is nothing in the provisions of the will, or in the terms of the inter vivos trust or apparently in the insurance policies providing expressly or by clear implication for the payment of the Federal estate tax. The trust appears to

be self-sustaining. The fact that the trustees were not to sell the capital stock of either of the corporations unless they sold all the stock in that corporation has no material bearing on the liability of the trust for an apportionment of the tax. Proration is the rule under apportionment statutes, and an exception to the rule is not to be lightly inferred. An exception to apportionment must be based upon the language of the will or the written instruments providing for the transfer of the property, or the particular disposition of the property must be such that the imposition of a part of the tax burden would be clearly inconsistent with such a disposition. The demurrers of the trustees of this trust and of the executors of Mrs. Beals should be overruled. *Matter of Ryan*, 178 Misc. (N. Y.) 1007. *Matter of Dettmer*, 179 Misc. (N. Y.) 844. *In re Iselin's Will*, 41 N. Y. Sup. (2d) 808. *Matter of Blumenthal*, 180 Misc. (N. Y.) 895.

But the terms, purpose and nature of the trust of the timberlands show that the testator realized that these lands would be a source of expense for a number of years, and he authorized the trustees of the residuary trust to pay these expenses out of the residue of his estate in such manner as they deemed "fair and reasonable to the other parties involved." It is plain that the burden of the tax upon this trust would fall upon the residuary estate, and that the testator by the directions given for the upkeep of the timberlands at the expense of his residuary estate clearly implied that no part of the Federal estate tax was to be allocated to this trust. The demurrer of the trustees of this trust should be sustained. *In re Bernheimer's Estate*, 352 Mo. 91. *Matter of James*, 180 Misc. (N. Y.) 441. *Matter of Brokaw*, 180 Misc. (N. Y.) 490. *In re Handley*, 181 Penn. St. 339.

The demurrer of Philip C. Beals raises no questions other than those discussed, and must be overruled.

This opinion in so far as it relates to the petition in equity is the opinion of the majority of the court.

The orders denying the motions to dismiss the probate petition are reversed and a decree must be entered dismissing that petition. On the petition in equity, the inter-

locutory decree overruling the demurrer of The Merchants National Bank of Boston and Philip C. Beals, trustees under the eighth clause of the will of George C. Beals, relating to the timberlands, must be reversed and an interlocutory decree must be entered sustaining that demurrer; the interlocutory decrees overruling the demurrer of John W. Marno and Philip C. Beals, trustees of the Philip C. Beals Trust, the demurrer of The Merchants National Bank of Boston and Philip C. Beals, executors under the will of Edith J. Beals, and the demurrer of Philip C. Beals individually, must be affirmed. Costs and expenses of this appeal may be allowed in the discretion of the Probate Court.

*So ordered.*