KATIRINA WILKISIUS & another *vs.* ELIZABETH SHEEHAN & others.

Middlesex.        November 19, 1926. — January 7, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Contract,* Validity. *Deed,* Validity. *Fraud. Equity Jurisdiction,* To cancel deed for fraud.

A master who heard a suit in equity to rescind a transaction and cancel deeds relating to an exchange of real estate on the ground that the final instruments executed by the plaintiffs were procured by false and fraudulent representations on the part of the defendant, and that they were not in accordance with previous oral agreements made by the parties, found in substance that the plaintiffs were of foreign birth and could neither read nor write the English language; that preliminary negotiations and oral agreements were carried on in the presence of representatives of both parties and through an interpreter employed by both parties; that there was no evidence that any of the parties was negligent in using as interpreter the man who acted as such; that neither the defendant nor his agents attempted to defraud or cheat the plaintiffs and that no false nor fraudulent representations were made; that the plaintiffs first knew all the details of the transaction after it was completed; that their failure to understand these details was not due to fraudulent acts on the part of the defendants but to their own inability to read, write, speak or understand the English language, and to the incapacity of the interpreter. A final decree was entered dismissing the bill. On appeal by the plaintiffs, it was *held,* that the decree was warranted under the general rule that, in the absence of fraud, one who signs a written agreement is bound by its terms whether he reads and understands it or not.

BILL IN EQUITY, filed in the Superior Court on July 28, 1925, and afterwards amended, to rescind a transaction and to cancel deeds relating to real estate.

In the Superior Court, the suit was referred to a master. Material facts found by the master are described in the opinion. An interlocutory decree was entered confirming the report. The suit was heard on the pleadings and the master's report by *Brown,* J., and by his order a final decree was entered dismissing the bill. The plaintiffs appealed.

*F. J. Bagocius,* for the plaintiffs.

*M. G. Rogers,* for the defendants.

SANDERSON, J.    The plaintiffs seek by this bill in equity to have cancelled an agreement for the exchange of real estate and a note for $6,000 and a mortgage securing the same, executed by the plaintiffs and delivered to the defendants O'Keefe and Sheehan (hereinafter called the defendants), and to have the mortgage discharged; also to have mutual reconveyances of the real estate ordered and for other relief; upon the ground that the plaintiffs were unable to read or write, and that their signatures were obtained by false and fraudulent representations of the defendants, to the effect that the provisions of the written contract were in accordance with a previous oral agreement of the parties and that all other papers in the transaction were executed in accordance with it, while in fact the written contract contained a provision for a note to be given by the plaintiffs and secured by a fourth mortgage on the real estate, and that in the completed transaction such a note and mortgage were executed contrary to the oral agreement of the parties.    A receiver for the property was appointed and the suit was referred to a master.    No appeal has been taken from the decree overruling exceptions and confirming the report.    The final decree, after providing for the application of income received by the receiver and the termination of the receivership, ordered that the bill be dismissed.    No question has been raised as to so much of the decree as relates to the receiver. The question presented by the appeal is, whether the decree dismissing the bill is justified.

The master found that the plaintiffs, husband and wife, were Lithuanians, neither of them being able to read or write English; that the wife, who held the title to one of the pieces of property, did not speak or understand English and

that the husband had limited ability to speak and understand the language; that in the conversation between the plaintiffs and the defendants' agent, at which they orally agreed to exchange properties, a Lithuanian acted as agent of both parties in interpreting; that the plaintiff Romius, who had authority to act for his wife in the transaction, the defendants' agent and the interpreter then went to the attorney's office to have the agreement drawn; that the agent stated to the attorney the terms of the verbal agreement, and this statement formed the basis of the contract which was dictated in the presence of the parties; that the agreement was read aloud in the presence of the plaintiff Romius, and the interpreter was asked to explain it to him before it was signed; that the interpreter said something to Romius in a foreign language and reported that he understood, and the contract was then signed; that two days later the deeds and other papers were executed and delivered in accordance with the terms of the written agreement, the same interpreter acting in the matter, at the request of the defendants, to explain the transaction to the plaintiffs.

The master further found that no effort was made by the defendants or their agent, or by the attorney who drew the papers, to withhold from the plaintiffs information concerning any details of the transaction; that both sides were furnished at the time the papers were passed with a typewritten statement setting forth the purchase price of each piece of property, the accrued interest on the mortgages, the accrued taxes and adjusted rents; that neither the defendants nor their agents attempted to defraud or cheat the plaintiffs and that no false or fraudulent representations were made. The master stated that he disbelieved the testimony of the plaintiffs to the effect that the oral agreement was for an even exchange and that when the oral agreement was made nothing was said about a fourth mortgage. He also found that when the papers were passed the plaintiff Romius took part in a conversation about the method of paying the fourth mortgage and the rate of interest thereon.

The master further found that the plaintiffs first knew

all the details of the transaction after it was completed, that their failure to understand these details was not due to fraudulent acts on the part of the defendants but to their own inability to read, write, speak or understand the English language, and to the incapacity of the interpreter, and that there was no evidence on which he could find that any of the parties was negligent in using as interpreter the man who acted as such.

The general rule is, that, in the absence of fraud, one who signs a written agreement is bound by its terms whether he reads and understands it or not. This rule applies to a person who cannot read. *Grace* v. *Adams*, 100 Mass. 505. In the case of *Atlas Shoe Co.* v. *Bloom*, 209 Mass. 563, it was said that although the defendant, who signed the guaranty dictated in his presence, did not understand its terms because of his limited intelligence and his inability to read, yet he was bound because the plaintiff held out no inducements and the defendant could have refused to sign until its contents had been translated or fully explained to him; and the court stated "In the absence of fraud practised upon him, the defendant comes within the general rule, that mere ignorance of the contents of an instrument which a party voluntarily executes is not sufficient ground for setting it aside if ultimately the paper is found to be different from what he supposed it to be." The case is distinguishable in its facts from *McKinney* v. *Boston & Maine Railroad*, 217 Mass. 274, and from *Dzuris* v. *Pierce*, 216 Mass. 132.

*Decree affirmed with costs.*