MARION L. GOLDMAN & another *vs.* DORA SHULKIN & another.

Essex.    May 8, 1946. — July 8, 1946.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Landlord and Tenant,* Tenancy at will, Tenancy at sufferance, Rent. *Trespass. Equity Jurisdiction,* Trespass. *Easement.*

A grantee of a building with notice of an agreement between his grantor and the owner of adjoining land whereby the grantor had agreed to pay the owner a certain rental for the privilege of maintaining fire escapes protruding over that land, by continuing the maintenance of the fire escapes and ignoring repeated demands by the adjoining owner for the rent, became a tenant at will as to the privilege and properly could be found to have impliedly agreed to pay the stated rent; and, when he later repudiated any tenancy but continued the maintenance, he remained liable for rent as a tenant at sufferance.

Upon the termination of a tenancy at sufferance permitting maintenance of fire escapes over adjoining land, the adjoining owner was entitled in equity to relief by injunction against such maintenance.

An easement appurtenant to a building, and not in gross, was created
by the provisions of a recorded instrument under seal that the owner
of land adjoining the building granted to the owner of the building the
right to maintain on an exposed wall a covering by a veneer of brick,
lath and cement or gunite encroaching on the adjoining land not more
than four and one half inches, that the owner of the building "by the
encroachment and maintenance of said wall" should not "acquire
any rights in the" adjoining land, and that, if the owner of the ad-
joining land should "desire to use the said space occupied by the said
brick, lath and cement or gunite for the erection of a wall or chimney or
for any other purpose," he might terminate the right of the owner of
the building so to encroach and the owner of the building "hereby
agrees to remove" the encroachment "at his own expense within
thirty days from notice"; and, where the owner of the adjoining land
had no "desire to use the said space occupied by the" encroachment,
he had no right to terminate the easement as against a grantee from
the owner of the building.

BILL IN EQUITY, filed in the Superior Court on October
16, 1944.

The case was heard by *Hanify*, J.

*R. L. Weiner*, for the defendant Shulkin, submitted a
brief.

*R. L. Sisk*, for the plaintiffs.

LUMMUS, J.   From the reported evidence the following
facts appear.   From a time prior to 1941 the plaintiffs have
owned a block, called the Goldman block, originally of five
stories, on the northerly side of Central Square in Lynn,
together with land in the rear of that block and of the Bauer
block which adjoins the Goldman block on the west and
was owned by the trustee or trustees of the R. S. Bauer
Trust, hereinafter called Bauer.   The Bauer block was also
five stories high, and nearly or quite filled the small lot on
which it was built.

1. On November 13, 1941, the plaintiffs and Bauer by an
exchange of letters made an arrangement, terminable upon
written notice by either party, by which for a monthly rental
of $37.50 to be paid by Bauer, Bauer was given the right to
maintain fire escapes attached to the rear of the second story
of the Bauer block and to carry them to the ground, all
being above or on land owned by the plaintiffs.   That rent
was paid until December 31, 1943, the date of the deed by
which the Bauer block was conveyed to Dora Shulkin,

hereinafter called the defendant, who took with notice of the arrangement. From January 31, 1944, until August 21, 1944, the plaintiffs wrote several letters to the defendant, demanding rent for the continued maintenance of the fire escapes, and demanding their removal unless she should pay the rent. She neither paid the rent nor removed the fire escapes, but remained silent. In January, 1944, her husband, who was her agent, tried to buy from the plaintiffs a permanent easement to maintain the fire escapes. She now claims no right to maintain them and repudiates any obligation to pay rent for the use of them.

We think that because of her long silence with respect to paying rent for her continued maintenance of the fire escapes, with full knowledge of the facts, it was properly found that the defendant impliedly agreed to pay the established rent. *Williams* v. *Seder*, 306 Mass. 134, 137, 138. She became a tenant at will. Later by her answer she repudiated any tenancy, but continued to maintain the fire escapes. Though her tenancy at will may have ended, she remained liable for rent as a tenant at sufferance, even during the pendency of proceedings to evict her. G. L. (Ter. Ed.) c. 186, § 5. *Dennett* v. *Nesson*, 244 Mass. 299. She was properly held liable to the plaintiffs for the established rent of $37.50 a month from February 1, 1944, until February 1, 1946, a total of $900, in the assessment of damages in the final decree which was entered in February, 1946. The plaintiffs ask no further damages. Since the tenancy was revocable by either party, and neither party contends that it still exists, the maintenance of the fire escapes has become a continuing trespass which entitles the plaintiffs to relief by injunction. *Goldstein* v. *Beal*, 317 Mass. 750, 757, 758. *Scioscia* v. *Iovieno*, 318 Mass. 601.

2. On October 26, 1941, there was a fire in the Goldman block, and after that the three upper stories were removed, leaving it a two-story building. The easterly wall of the Bauer block above the second story was thus left without protection from the elements and was found to be porous. On February 17, 1942, a written instrument was entered into by the plaintiffs and Bauer, which was recorded in the

registry of deeds on October 28, 1942. The instrument provided that the plaintiffs give to Bauer "the right to cover the" easterly wall of the Bauer block "by a veneer of brick, lath and cement or gunite, provided the same does not encroach over the property of" the plaintiffs for more than four and one half inches. The instrument provided that "by the encroachment and maintenance of said wall upon the land of" the plaintiffs "the said Bauer shall not acquire any rights in the land" and that if the plaintiffs "desire to use the said space occupied by the said brick, lath and cement or gunite for the erection of a wall or chimney or for any other purpose, the said Bauer hereby authorizes the use of said wall, the surface thereof or any part of the said wall, or the said" plaintiffs "may terminate the right of said Bauer to have the said brick, lath and cement or gunite encroach over their land and the said Bauer hereby agrees to remove the same at his own expense within thirty days from notice." This instrument was under seal, but because of the friendly relations of the parties Bauer furnished no actual consideration.

After the conveyance of the Bauer block to the defendant, who took with notice of the instrument of February 17, 1942, and her failure to pay rent for the maintenance of the fire escapes, the plaintiffs on April 11, 1944, asked her for a conference about the boundary wall, but she made no reply. On May 19, 1944, the plaintiffs notified her that they had decided "to terminate your right" to have the wall "continue to encroach over the land" of the plaintiffs, and asked her to remove the encroaching part within thirty days, "as provided in" the instrument of February 17, 1942. Further notices to remove were given to the defendant on August 21, 1944, and September 28, 1944, but the defendant continued to do nothing and to make no reply. At last, on October 16, 1944, the plaintiffs brought this suit for an injunction.

The defendant's answer upon this matter is evasive, for she sets up merely her want of personal knowledge of the instrument of February 17, 1942, and of the title in general, whereas it is clear that her husband, who was her agent,

had full knowledge of all the material facts. The very deed by which she obtained title contains references showing that she or her agent knew all the facts. Her only substantial defence in this court is that the right to encroach, by the terms of the instrument of February 17, 1942, was to continue until the plaintiffs should "desire to use the said space occupied by the" encroaching veneer, and that there is no evidence that the plaintiffs have ever expressed or formed any such desire.

On this point we think her defence must prevail. The instrument of February 17, 1942, seems to us a grant of an easement to maintain an encroaching wall, until the plaintiffs should desire to use the space occupied by the encroachment. *Baseball Publishing Co.* v. *Bruton*, 302 Mass. 54, 57, 58. The easement in this case, unlike that in the *Bruton* case, was legal and not equitable, and was obviously appurtenant to the Bauer block and not in gross. *Phillips* v. *Rhodes*, 7 Met. 322, 324. *Underwood* v. *Carney*, 1 Cush. 285. *Dennis* v. *Wilson*, 107 Mass. 591. *Peck* v. *Conway*, 119 Mass. 546, 549. *Willets* v. *Langhaar*, 212 Mass. 573 575. *Brooks* v. *West Boston Gas Co.* 260 Mass. 407, 409. The record is bare of any suggestion that the plaintiffs have, or ever had, any desire to make any use of the space occupied by the encroaching wall. For this reason we think that there has been no termination of the easement.

We have no occasion to consider whether the decree of February 4, 1946, which dismissed the bill as against a certain defendant, was a final decree, standing by itself, or not. We find no error in it, and it is affirmed, whether it be deemed to stand by itself or in conjunction with another decree denominated "final" entered on the same day, which gave relief primarily against the defendant Dora Shulkin. *Monotype Composition Co. Inc.* v. *Kiernan*, 319 Mass. 456. *Vincent* v. *Plecker*, 319 Mass. 560, 563, note. That latter decree is modified by the deletion of the paragraph numbered 1 thereof, which dealt with the encroaching wall, and as so modified it is

*Affirmed with costs.*