*Municipal Court of the City of Boston*

No. 497090

**ANNINA D'ALOISIO**
v.
**MORTON'S, INC.**
and
**HALMOR, INC.**

(December 1, 1959 — June 2, 1960)

*Present:* Gillen, J. (Presiding), Lewiton & Glynn, J.

Case tried to *Shamon, J.*

*Lewiton, J.* The plaintiff left her mink coat with the defendant Halmor, Inc. (Halmor), a wholly-owned subsidiary of the defendant Morton's, Inc., for storage. When she sought return of the coat some months later it could not be located. She brought this action in which she sought recovery against Morton's, Inc. in count 1 for conversion, and against Halmor in count 2 for negligence in the care and custody of the coat, and in count 3 for conversion. The defendants set up a general denial and further answered that under the storage agreement, the plaintiff could recover no more than $300, which sum had been tendered to the plaintiff by the defendants, and refused by her. After denying requests for rulings by the defendants, the trial judge made detailed findings and rulings (some described by him as findings) and found for the defendant Morton's, Inc. on count 1, and for the plaintiff against Halmor in the amount of $2,050 on counts 2 and 3, respectively. This report brings here for review the denial of the requested rulings.

*At the trial there was evidence to show the following facts,* most of which were undisputed: Morton's, Inc., which was incorporated in 1948, has had a place of business

on Causeway Street, Boston, where it has sold garments and other merchandise, and has been at all material times a duly licensed and bonded warehouse under Mass. G. L. (Ter. Ed.) c. 105. Halmor was incorporated in 1956, and has had a usual place of business on Boylston Street, Boston, where it has sold merchandise, and received furs for storage as agent for Morton's, Inc. Both defendants have conducted business under the name of "Morton's", and the general public has not been aware that the two locations were owned or operated by separate corporations. Halmor had no storage facilities of its own, but Morton's, Inc. has had storage facilities in Boston and Chelsea. Morton's, Inc. and Halmor have divided the profits derived from the repair and storage of garments.

On May 15, 1958 the plaintiff, who speaks and understands little or no English, went with her nineteen year old daughter, a college student, to the premises of Halmor on Boylston Street, to store her mink coat. In prior years she had stored it at a different and wholly unrelated establishment. It appears from the report that there was a lengthy conversation in the presence of the plaintiff between one Wise, agent of Halmor, and plaintiff's daughter, which was translated to the plaintiff by her daughter, who in turn translated plaintiff's answers to Wise. The plaintiff's daughter was there because of her mother's language difficulties, and was acting for her. At the conclusion of this conversation, Wise received the coat for storage and gave

the plaintiff a paper (Exhibit 5) entitled "STORAGE RECEIPT & CONTRACT". At the top of the paper appeared the trade name "Morton's", and the address 89 Causeway Street, Boston 14, Mass.". Other items on the face of the paper were the plaintiff's charge account number, her name and address, a brief description of the coat, instructions to "tack cuffs where pinned", itemized charges of $6.00 for storage and $10.00 for "Mortonizing" of the coat, and the figures "$300.00" which had been written in a blank space under the caption "Valuation by customer — liability not exceeding —". After the paper had been filled out, it was signed by the plaintiff and by Wise, at a point under a statement, printed in small type, to the effect that the storage was subject to the terms and conditions set forth on the reverse side. Among those conditions were paragraphs stating that (1) the receipt embraced all agreements between the parties with respect to storage; (2) liability for loss or damage from any cause, would be limited to the amount of the declared value of the coat; (3) Morton's agreed to effect insurance on the coat for its declared value; and (4) the coat might be stored or processed at any place selected by Morton's. None of these provisions as such were explained or read to or by the plaintiff or her daughter.

On the same day the coat was sent to Halmor's alteration shop, and there was no evidence as to its whereabouts thereafter. When the plaintiff called for the coat in the

fall of 1958, a thorough search was caused to be made by both defendants, but the coat could not be found. Wise notified the plaintiff that the coat was lost and tendered her the sum of $300 which she refused.

Among other requests, the defendants sought rulings that (Request No. 2) the document referred to above was a contract as matter of law, and that (Request No. 3) the plaintiff was limited by the terms of contract from recovering any sum in excess of $300.00. In our opinion both requested rulings should have been given, and their denial was error.

The testimony of the plaintiff's daughter as set forth in the report clearly demonstrates that there was a considerable discussion between her and Wise pertaining to insurance and limitations of liability where the minimum storage charge was paid, as it was in this case. She testified that Wise asked "how much we wanted to insure it for", and she asked him what the charge was, "and he said $6.00 for $300 minimum; and we agreed."; that she fully understood that the form being signed by her mother declared the value of the coat at $300; that she saw that amount written down on the form before it was signed; that she was then aware that if she had wanted to set a higher value she could have done so, in which case the storage charge would have been higher than the minimum of $6.00 to which she in fact agreed; that her mother did not participate in the conversation with Wise, but that she, the daughter, translated anything that might

be of importance; that she was there, acting for her mother at that time; that she did not remember telling her mother how much insurance they were getting; that she did not tell her mother that by paying a larger charge, they could have more insurance, though she, the daughter, fully understood that this was so; that she saw her mother sign the paper in question; that she "thought the thing was charged", and that her mother (the plaintiff) "used charge accounts a lot and she always signs".

When the plaintiff was asked at the trial whether her daughter said anything to her at the time of the delivery of the coat about $300 insurance, she answered: "She asked about the insurance, because we didn't know the rate, and he said $6 was the minimum and that was agreed". The Report states that plaintiff did not understand that she could have insured the coat for a larger amount if she was willing to pay a higher charge, as her daughter failed to tell her.

In our opinion, Exhibit 5, entitled "STORAGE RECEIPT & CONTRACT" was a contract, as matter of law. As noted in the foregoing statement of facts, it contained on its face many of the indicia of a contract, as distinct from a simple claim check or a receipt intended for purposes of identification. Cf. *Kergald v. Armstrong Transf. Express Co.,* 330 Mass. 254, 255; *Polonsky v. Union Fed. Sav. & Loan Assoc.,* 334 Mass. 697, 701; *French v. Merchants & Miners Trans. Co.,* 199 Mass. 433, 435;

*Fonseca v. Cunard Steamship Co.,* 153 Mass.
553, 555; *O'Regan v. Cunard Steamship Co.,*
160 Mass. 356, 361. Not insignificant on this
issue is the fact that both parties to the trans-
action here signed Exhibit 5 after its blank
spaces were filled in, a procedure hardly
consistent with its being regarded by the
parties as a simple claim check or identifi-
cation slip.

 Having signed and accepted this
document, the plaintiff in the absence of
fraud, is bound by its terms and by the limit-
ation of liability therein set forth, despite the
fact that it was not read by her or to her.
*Kergald v. Armstrong Transf. Express Co.,*
supra.; *Polonsky v. Union Fed. Sav. & Loan
Ass'oc.,* supra.; *Boynton v. Amer. Express Co.,*
221 Mass. 237, 240; *Wilkisius v. Sheehan,*
258 Mass. 240, 243; *Gold v. Boston Elev. Ry.,*
244 Mass. 144, 147; *Tremont Trust Co. v.
Burack,* 235 Mass. 398, 401; *Atlas Shoe Co.
v. Bloom,* 209 Mass. 563, 567; *Singer v.
Merchants Despatch Transp. Co.,* 191 Mass.
449, 454. This principle is fully applicable
even though the plaintiff did not speak or
understand English. *Paulink v. Amer. Ex-
press Co.,* 265 Mass. 182, 185; *Wilkisius v.
Sheehan,* supra.; *Secoulsky v. Ocean Steam
Navig. Co.,* 223 Mass. 465, 466. She had
ample opportunity to have the document read
to her by her daughter, who was present and
acting as her interpreter in this transaction.
The fact that the daughter may have neg-
lected to translate some important parts of the
discussion with Wise does not negate his

efforts, as shown by the reported evidence, to explain in detail the insurance and liability aspects of the transaction. The plaintiff must bear the consequences of any inadequacy or incompetence on the part of the interpreter selected by her. *Cf. Camerlin v. Palmer Co.,* 10 Allen 539, 541-2; *O'Brien v. Bernoi,* 297 Mass. 271, 273; *Comm. v. Vose,* 157 Mass. 393, 395.

Since the evidence here did not warrant a finding of fraud which would take this case out of the general rule, we hold that the plaintiff's recovery under count 2, alleging negligence in the performance of the storage agreement, could not properly exceed $300. The denial of requested rulings to this effect was error.

The finding for the plaintiff on count 3, in which the plaintiff alleged conversion of her coat by Halmor, cannot stand since it was based expressly on certain erroneous rulings of law (described as "findings"). Thus the trial judge "found" that when the defendant failed to deliver the coat to the plaintiff upon her demand, "a conversion of the coat then and there took place".

The rule is well settled that the plaintiff, in relying upon demand and refusal as the basis for conversion, has the burden of proving that at the time of the demand and refusal the defendant had control of the article so as to be able to comply with the demand. *Marshall Vessels, Inc. v. Wright,* 331 Mass. 487, 489; *Premium Cut Beef Co. v. Karp,* 318 Mass. 229, 230-31; *De Young*

*v. Andrews Co.,* 214 Mass. 47, 50. This burden the plaintiff failed as matter of law to sustain, and no finding or ruling of conversion based simply upon demand and refusal can be sustained.

■ The trial judge also adopted the plaintiff's theory that Halmor, not having a license to conduct a public warehouse pursuant to G. L. (Ter. Ed.) c. 105, acted illegally in accepting the plaintiff's coat for storage, and by so doing was guilty of converting the coat *ab initio.* In this conclusion, also, there was reversible error. There was uncontradicted evidence that Halmor was acting as agent for Morton's, Inc., a duly licensed warehouse, in receiving the coat for storage, and this is buttressed by the fact that the address printed on the "STORAGE RECEIPT AND CONTRACT" was that of Morton's, Inc., rather than that of Halmor. There was no evidence that Halmor did in fact store articles for hire or maintain any storage facilities, or was engaged in the business of a public warehouse as defined in the pertinent statute, (G. L. (Ter. Ed.) c. 105, §§1, 7). Consequently, it was not required to be licensed under that statute.

■ Moreover, even if Halmor had been required, under a proper construction of the statute to be licensed, its acceptance of articles for storage would not in and of itself constitute a conversion of such articles, although it would subject Halmor to the penalties prescribed by law (see G. L. (Ter. Ed.) c. 105, §2).

■ The plaintiff further argues that Halmor was guilty of committing a fraud on the plaintiff by reason of its use of the trade name "Morton's" and by its failure to disclose to the plaintiff that it was in fact a different corporation from Morton's, Inc., the original owner and user of that trade name; that by reason of that fraud, the plaintiff was induced to surrender her coat to a corporation unknown to her, and "conducting its business of fur storage in defiance of the laws of the Commonwealth"; and that by so obtaining possession of the plaintiff's coat, the defendant Halmor was guilty of converting it. We are unimpressed by this argument as applied to the facts of this case. It is, of course, true that when one obtains the property of another through fraudulent misrepresentation, such acquisition of possession may constitute a conversion of the property. *Devlin v. Houghton,* 202 Mass. 75, 81; *Hagar v. Norton,* 188 Mass. 47; *Cf. Dean v. Ross,* 178 Mass. 397; See *Restatement, Torts,* §§221 (b), 222.

■ However, the essential elements of fraud are lacking here. While Halmor used the name of "Morton's" (and had filed a certificate pursuant to G. L. (Ter. Ed.) c. 110, §5) in the City Clerk's Office identifying itself as the user of said trade-name, which certificate is a matter of public record), there was a complete absence of evidence in this case from which it could be found that the plaintiff had ever had any previous dealings with, or had even had any knowledge of

Morton's, Inc., the original user of that trade-name, or that the plaintiff relied in any degree upon the reputation, resources or identity of Morton's, Inc. Apart from other items, the want of any such evidence would preclude a holding that the plaintiff had been fraudulently induced to surrender possession of her coat to Halmor because of an express or implied representation by the latter that it was Morton's, Inc., its parent corporation. Whether Morton's, Inc. could be chargeable with liability for defaults by its subsidiary which it permitted to use the trade-name "Morton's" is a question not now before us. *Cf. Barron v. McLellan Stores Co.,* 310 Mass. 778; *Timmins v. F. N. Joslin Co.,* 303 Mass. 540, 542; *Sherman v. The Texas Co.,* 340 Mass. 606, 608, 609.

*Finding for plaintiff on counts 2 and 3 vacated.*

*Judgment to be entered for plaintiff in amount of $300 'on count 2.*

Joseph G. Kelly and Samuel A. Valenti, both of Boston, for the Plaintiff.

Edward O. Proctor, Jr. and William T. Conlan, both of Boston, for the Defendants.