Coven, J.
The defendant, Deley Dalla Costa (“Costa”), has appealed the trial court’s determination that he is personally liable for rent owed on a lease for the location of the church of which he is the pastor. Because we conclude that the lease was ambiguous and that extrinsic evidence did not support the trial judge’s determination, we vacate the judgment and order a new trial.
On November 1, 2008, Marlboro Square, LLC (“Marlboro Square”)[2] entered into a two-year lease agreement, beginning that date. In the first paragraph of the twenty-one page lease, the tenant was identified as “Igreja Presbiteriana Renovada Deley Dalla Costa (Tenant)This identification was typewritten. At the end of the lease, under the heading TENANT, Costa signed without restriction. Below the signature line, “Deley Dalla Costa” was typewritten; and below that identification, the name of the church, “Igreja Presbiteriana Renovada,” was typewritten. Exclusive of those identifications and from our review, the lease used the term “tenant’ or its possessive (“tenants”) two hundred and twenty-two times. In four other places, the word “tenant’ appeared in the plural.[3] The term ‘Tenants,” immediately followed by either “Building” or “business,” was used twice.[4] The lease also referred to the tenant at least seven times with the words “if or “its.” Each page was initialed by both David J. Winske (“Winske”), Marlboro Square’s manager, and Costa.
Article 7.01 identified the use of the premises as a “Church,” and Article 1 identified the leased premises as “416 #10 Boston Post Road, Marlborough, Ma.” The church was organized under the laws of the Commonwealth on November 26,2002. The certificate of organization lists Costa as the president, clerk, and director.[5] It shows that the name of the church, International Revival Presbyterian Church, was *132 changed from Igreja Presbiteriana Renovada NA America, Inc. on May 22,2008. The location of its principal office is listed as 416 Boston Post Rd. East No. 7. There was evidence that the church began its operation at 416 Boston Post Rd. East No. 7 in 2001 prior to its relocation to No. 10. The judge found that this location has been the site for the church since 2002. Costa testified that the lease at issue in this case was the first lease he had ever signed. Winske suggested in his testimony that leases for the periods prior to the lease at issue were executed. The evidence was left undeveloped as to the parties’ past course of conduct in identifying or designating the tenant from 2001 through the signing of the lease at issue.
The trial judge found that for the four months before the entry of judgment in favor of Marlboro Square, the church had been conducting services at a new location. However, the trial judge found that property, i.e., “a stage, pews, books, other furniture and bicycles,” had been left behind in the leased premises. The judge further found that Marlboro Square had, at some undetermined point, changed the locks on the premises; but that the locks were changed as a “protective measure” and did not reflect “an acceptance by Marlboro of a surrender of the property so as to excuse payment of rent.”[6]
Whether the lease was ambiguous as to the identity of the tenant was an issue of law for the judge. Diamond Crystal Brands, Inc. v. Backleaf LLC, 60 Mass. App. Ct. 502, 504-505 (2004) and cases cited. “A term is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.” Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998). To determine whether a lease is ambiguous, the language of the lease, to the exclusion of extrinsic evidence concerning its meaning, is examined. Bank v. Thermo Elemental Inc., 451 Mass. 638, 649 (2008). “[E]xtrinsic evidence may be used as an interpretive guide only after the judge or the court determines that the contract is ambiguous on its face or as applied. See General Convention of the New Jerusalem in the U.S., Inc. v. MacKenzie, 449 Mass. [832,] 835-836 [(2007)]. Extrinsic evidence may not be used as the basis for concluding in the first instance that a contract is unambiguous as matter of law. See id. at 836.” Bank, supra at 649. “Once a contractual ambiguity emerges, the meaning of the uncertain provision becomes a question of fact for the trier.” Browning-Ferris Indus., Inc. v. Casella Waste Mgt. of Mass., Inc., 79 Mass. App. Ct. 300, 307 (2011).
The trial judge made no written ruling as to whether an ambiguity existed in the lease at issue. He did, however, find Costa personally liable. It was an error of law to have concluded that the lease was unambiguous as to who was the tenant. There is neither an entity, nor a person, named “Igreja Presbiteriana Renovada Deley Dalla Costa.” Reversing the order of names in the signatory section would not have clarified the issue. Overwhelmingly, the lease identified the tenant in the singular.
Assuming that the judge did find that an ambiguity existed and turned to extrinsic evidence to determine the intentions of the parties, the applicable standard of appellate review is whether his ultimate conclusion was clearly erroneous. “[A] finding is clearly erroneous when there is no evidence to support it, or when, although *133 there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” Clements v. Stop & Shop Cos., 2000 Mass. App. Div. 74, 75, quoting Guardianship of Clyde, 44 Mass. App. Ct. 767, 774 (1998). “If the [trial] courf s account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse it even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.” Edinburg v. Edinburg, 22 Mass. App. Ct. 199, 203 (1986), quoting Anderson v. Bessemer City, 470 U.S. 564, 573-574 (1985). On this record, we are convinced that a mistake has been committed.
The only evidence offered by Marlboro Square as to the identity of the tenant is found in the testimony of Winske, a member of Marlboro Square. When shown a copy of the lease during his testimony, Winske was asked, “[W]ho is the tenant or who are the tenants on this lease?” Winske answered, ‘The tenant is Deley Dalla Costa and the church.” The next question was, “Was it your understanding that there was one or two tenants in this property?” The response was, ‘Two tenants that — him as the church.” This exchange is ambiguous: there existed two tenants, with Marlboro Square’s understanding that their separate identities had been combined into a single identity.[7]
Though the trial judge had evidence that Costa and Winske initialed each page of the lease, the judge found that Costa “was unable to, and did not, read the lease,” and there is no evidence as to what, if anything, was discussed.[8] As found by the judge, Costa’s native language was Portuguese and he spoke “little English.”[9]
Thus, the record before us does not permit the conclusion that the trial judge was correct as a matter of law in his determination that Costa was the tenant here, particularly in view of Marlboro Square’s own expression of an ambiguous understanding as to who was the tenant, and Costa’s denial of personal liability. A new trial is in order.
We turn to the damages issues, which will likely arise upon retrial. A notice to quit effectively terminates a tenancy. “The ‘[t]ermination of a lease ends a tenant’s obli *134 gation to pay rent in the absence of any provision otherwise.’ Krasne v. Tedeschi, 436 Mass. 103, 109 (2002).” M.J. Realty Trust II v. Dinnocenzo, 2005 Mass. App. Div. 35, 38. In the absence of a provision to the contrary, former tenants become tenants at sufferance and are “liable to pay rent therefor for such time as they may occupy or detain the same.” G.L.c. 186, §3. See Brown v. Guerrier, 390 Mass. 631, 633-634 (1983). Where, as here, the lease does not address the amount of use and occupancy charges, such charges are determined by the fair rental value of the premises. Kobayashi v. Orion Ventures, Inc., 42 Mass. App. Ct. 492, 502 (1997). Rent charged under a lease may, however, be competent evidence as to the fair rental value. Goldman v. Shulkin, 320 Mass. 161, 163 (1946); Freitas v. Olson & Appleby, Inc., 4 Mass. App. Ct. 801, 801-802 (1976).
Marlboro Square argues that Article 31 of the lease allows it to collect, for use and occupancy, a monthly rent equal to the lease rental amount. Article 31 does address the issue of rent in the situation where a tenant “holds over after the expiration or earlier termination” of the lease. It further establishes an obligation to pay rent in the amount “in effect immediately preceding” the termination. However, Article 31 expressly applies “if Tenant is not otherwise in default” under the lease. Pursuant to Article 10.01, failure to pay rent when due constitutes a default. Article 31 did not serve as a basis for establishing use and occupancy charges, and we are unable to determine how the trial judge calculated damages for use and occupancy.
In addition to determining the amount of monthly use and occupancy charges, there also remains the issue of measuring the period of time for which use and occupancy may be charged. As explained in Lowell Hous. Auth. v. Save-Mor Furniture Stores, Inc., 346 Mass. 426 (1963), “ [t] he basis of liability for use and occupation consists in the control over the premises which effectively deprives [the landlord] of the use of the property.” Id. at 431. Control, however, does not depend on actual occupancy; it may be found where personal property is left behind and the property deprives the landlord of the use of the premises. Bruce v. Harvard Trust Co., 1 Mass. App. Ct. 373, 374-375 (1973). The issue of control is a question of fact to be determined at trial. The changing of locks by a landlord, in our view, would be an important factor, although not necessarily dispositive, in determining whether a tenant exercises control over the premises such that the tenant is liable for use and occupancy charges.
The judgment of the trial court is vacated, and the case is returned to the Marlborough Division of the District Court Department for a new trial.
So ordered.

 The parties’ lease and their appellate briefs identify the plaintiff as “Marlboro Square, LLC.” The trial court docketed this case, and transmitted it to this Division, with a designation of the plaintiff as “Marlborough Square, LLC.”

 See Article 1.01, 8, and 9.05.

 See Article 9.01 and 26.

 Jonata Dalla Costa is listed as the treasurer.

 A tenant bears the burden of proof on the issue of surrender. Stavert v. Alden, 2000 Mass. App. Div. 181, 182.

 Rent invoices were issued by Winbro Realty to Igreja Presbiteriana Renovada. The evidence does not establish the connection between Winbro and Marlboro Square other than that Winske and his brother own Winbro and Winbro does snow plowing and some trash pickup at the location. There is no evidence that Marlboro Square was aware of how Winbro sent out the invoices.

 As noted, there was evidence offered by Costa that the only discussion he had with Winske concerned rent. The trial judge found, however, that the discussion, which involved Costa’s son-in-law acting as an interpreter, did not involve the lease at issue in this case but, rather, when Winske and Costa met to discuss the first lease.

 “The general rule is, that, in the absence of fraud, one who signs a written agreement is bound by its terms whether he reads and understands it or not.” Haulier v. Zotos, 446 Mass. 489, 501 (2006), quoting Wilkisius v. Sheehan, 258 Mass. 240, 243 (1927).