Per Curiam.
After a two-day jury-waived trial in the Brookline District Court, the judge concluded: ‘The Court finds that the Plaintiff and the Plaintiffs witnesses were not credible; and as a result, the Plaintiff failed to prove his case by a preponderance of the evidence.” As a result, she found for the defendant, Donald Cassidy (“Cassidy”), on all counts of the complaint. Evaluation of the credibility of the witnesses is part of the discretion conferred on the trier of fact in a civil case. As the plaintiff, Christopher Marsh (“Marsh”), has waived any claim that there was an error of law in the trial courts judgment, it is summarily affirmed.
This case involves a contract between plaintiff Marsh, who owns property in Brookline,[3] and defendant Cassidy, doing business as Cassidy Plumbing and Heating, pursuant to which Cassidy agreed to install two boilers at Marsh’s property. The written contract between the parties provided that Cassidy would install the boilers, including the electrical wiring, obtain any necessary permits, and have the boilers pass inspection. Cassidy guaranteed his workmanship for five years. On September 23, 2009, Cassidy told Marsh that the work was complete and received the balance due under the contract. Subsequently, Marsh complained that Cassidy breached the contract because the boilers malfunctioned and because they had not passed inspection when he claimed the job was complete.
As to the boiler malfunction, Marsh points to Cassidy’s[4] deposition, which includes the following:
Q. After you, Cassidy, reportedly completed the installation of the boiler [sic], the boilers malfunctioned.
A. Yes.
*145 At trial, it was not disputed that the boilers did frequently shut down, causing loss of heat and hot water to the tenants. Marsh and his witnesses, Michael Hart (“Hart”) and Alex Guran (“Guran”), testified that those shutdowns were caused by improper installation of the boilers. After Cassidy left the job, Marsh allegedly hired Hart and Guran, who, he contends, successfully completed the installation of the boilers at an additional cost of $9,887.00.
Cassidy and his witness, Stephen Mark (“Mark”), testified that the boilers shut down because tenants, possibly at Marsh’s direction, repeatedly turned off the radiators, causing the entire system to shut down, requiring a manual restart.[5] A fair reading of Cassidy’s trial testimony is that he, Mark, and his electrician, Julio Lupes (“Lopes”), installed the boilers correctly, and they were operating correctly when he left the site. Marsh concedes that was defendant’s testimony.[6]
The second claimed breach is that Cassidy did not ensure that the installed boilers pass electrical inspection by the town. During his deposition, Cassidy conceded that he learned that the boilers twice failed the municipal inspection. At trial, he conceded that his electrician did not get “signed off,” i.e., the wiring had not passed inspection, “a huge oversight on my part.”
At the close of defendant’s case, Marsh’s counsel mentioned he had prepared proposed findings and rulings, but he did not present them to the judge or file them into the record.[7] Finding Marsh and his witnesses not credible, the trial judge conclud *146 ed that he had failed to prove his case and ordered judgment for Cassidy.
1. The choice of the proper standard of review is complicated by Marsh’s counsel’s failure to file proposed findings and rulings with the trial judge. If he had done so, the judge would have been required to make findings and rulings pursuant to Mass. R. Civ. E, Rule 52. Her factual conclusions would then have been subject to clearly erroneous review, and her legal conclusions reviewed de novo. Ignoring his failure to file findings and rulings, Marsh’s counsel suggests to this Division that the trial judge’s entire decision must be reviewed de novo. We disagree.
This is not a topic that has escaped prior consideration. Our precedents are clear. “Given the absence of specific rulings of law or written findings of fact by the trial court, the defendant has presented nothing more than her objection to the court’s general finding for the plaintiff on the issue of possession. The correctness of a general finding, without more, does not constitute a question of law for appellate review.’’ Johanson v. Aldridge, 1999 Mass. App. Div. 182, 183, and cases cited. See also McDonough v. Ferrari Pool ’N Patio, Inc., 2000 Mass. App. Div. 100, 101; Subway Real Estate Corp. v. Marinello, 1999 Mass. App. Div. 180, 181; Macone Bros., Inc. v. Strauss, 1997 Mass. App. Div. 95, 96-97.
Marsh appeals the trial court’s rejection of his claims that Cassidy violated the contract by not installing properly operating boilers or by failing to have the wiring pass inspection. Each is an ordinary question of fact that would have been presented to, and decided by, a jury if one had been seated. In those circumstances, review of a judgment would have been pursuant to the clearly erroneous standard. By arguing instead that we review de novo the trial judge’s decision that Marsh failed to satisfy his burden of proof, counsel ingeniously seeks to turn his failure to request rulings to his client’s advantage. We decline (hat invitation. Johanson, supra.
Having failed to file proposed findings and rulings, counsel denied us a full decision prepared pursuant to Mass. R. Civ. P., Rule 52 (c). He is thus entitled to no more than this: Is there evidence in the trial record that, if credited, warrants the finding that Marsh failed to show he was entitled to relief. In effect, the test we will use is that used to make a decision on a motion for a required finding at the end of trial, a test that assumes the truth of the testimony offered in opposition to the moving party.[8] The decision below passes that test.
2. Boiler shutdowns. Despite Marsh’s claim to the contrary, even accepting that the boilers frequently shut down and that, at his deposition, Cassidy accepted counsel’s leading suggestion that the boilers “malfunctioned,” the trial judge was not required to find that Cassidy had violated his contractual promise to install working boilers.[9] First, of course, as Marsh concedes, the trial court rejected all of his testimony. Second, that court was free to give little weight to Cassidy’s incautious *147 “admission” at his deposition and instead to credit, as it did, his trial testimony that he and Mark did install the boilers correctly. The court was also free to accept Cassidy’s testimony, supported by Mark, that any shutdowns were not caused by improper installation or malfunctioning boilers, but were instead the responsibility of Marsh and the tenants, perhaps as part of Marsh’s plan to coerce favorable testimony from Cassidy. A party who prevents another’s performance of a contract cannot then take advantage of that nonperformance. Winchester Gables, Inc. v. Host Marriott Corp., 70 Mass. App. Ct. 585, 596 (2007).
3. Boiler wiring. The situation as to the failed inspection is different. It is clear that when Cassidy claimed to have finished the job, the electrical work had not passed inspection.[10] If the trial judge had made a factual finding that there had not been a breach of contract on this point, which she did not, even rejecting Marsh’s testimony, that would have been clearly erroneous. “[A] finding is clearly erroneous when there is no evidence to support it, or when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” Marlborough Sq., LLC v. Costa, 2011 Mass. App. Div. 131, 132-133, quoting Guardianship of Clyde, 44 Mass. App. Ct. 767, 774 (1998).
But breach is only one element of a contract claim. To be successful on a contract claim, a plaintiff must also show he “suffered damages as a result of the breach of contract’ (emphasis added). District Court Civil Model Jury Instruction 5.00 (June, 2004). See also Brooks v. AIG SunAmerica Life Assur. Co., 480 F.3d 579, 586 (1st Cir. 2007) (applying Massachusetts law). To prevail on the wiring issue, Marsh must show that evidence in the record compels the conclusion that the failure to pass inspection was the “effective cause” of specific compensable injury. See Clegg v. Graham & Harsip, P.C., 56 Mass. App. Ct. 600, 603 (2002). That he failed to do. There was evidence that he paid Hart and Guran nearly $10,000.00 after Cassidy had left the job. But the trial judge rejected that evidence as not credible. She was entitled to do that. Without that evidence, there is no proof that Marsh suffered any injury at all. In any event, even if the evidence relating to Hart and Guran is given weight, it demonstrates only that Marsh incurred some costs relating to the boilers. There is no evidence, from Marsh’s witnesses or otherwise, as to any expenses he incurred as a result of the failure of Cassidy to have the wiring pass inspection before he left the job.[11] There is evidence, again not accepted by the trial judge, he paid for additional electrical work, but the record does not prove that work was required to pass inspection rather than as part of the rewiring of boilers based on his belief that they had been malfunctioning. Since, as noted above, that theory of *148 breach was properly rejected by the trial judge, costs related to it would not be com-pensable.
Not every injury suffered by a party who has proved a breach of contract entitles him to compensation. As Justice Kaplan noted, the facile syllogism — you breached, he suffered loss, so pay him — “smacks of the fallacy post hoc ergo propter hoc.” Clegg, supra at 604 n.8. Cf. McCann v. Davis, Malm & D’Agostine, 423 Mass. 558, 559 (1996) (although law firm was shown to be negligent, malpractice claim against defendant attorneys failed because plaintiff failed to prove that negligence resulted in any damages).
Here, the trial judge heard Marsh, Cassidy, and their witnesses. She exercised her discretion as to which of them was more credible and ruled for Cassidy, in effect rendering a general verdict in his favor. We have no basis to second guess that judgment.
The judgment of the trial court is therefore affirmed.[12]
So ordered.

 There is a dispute between the parties as to the true use of the property Marsh owns. Marsh claims it is a two-family home, while Cassidy argues that it is an illegal rooming house. While this issue played a role in the parties’ conflict here, we need not resolve it on appeal.

 At the deposition, at trial, and before this Division, Cassidy has appeared pro se.

 Cassidy suggested that the reason for this seemingly strange behavior was to coerce him into signing documents supporting Marsh’s position in a dispute with a credit card company.

 Marsh states in his reply brief: “The totality of Cassidy’s argument is that he testified he installed the boilers correctly and that testimony should be sufficient to justify the Court’s Order. No doubt Cassidy believes he installed the boilers correctly...” (emphasis in original).

 At the end of Cassidy’s case, there is the following discussion:
[Marsh’s Counsel]: I have — just as a housekeeping matter, I have put together proposed Findings of Fact and Conclusions of Law. I have a copy for Mr. Cassidy. I thought it would make it easier for the Court. If the court wants to take them, great. If not —
[The Court]: I’d be happy not to take them.
[Marsh’s Counsel]: Okay.
[The Court]: And he [Marsh’s counsel] said I didn’t have to take them [proposed findings and conclusions] if I didn’t want them. And I said I didn’t want them.
No findings or conclusions were filed. Nor are any in the record. Of course, Mass. R. Civ. P., Rule 52(c) does not permit a judge to refuse to accept proposed findings and rulings. But the trial judge here, while not welcoming counsel’s offer, did not refuse to accept any. Marsh has not raised as an issue on appeal the judge’s treatment of his findings and rulings, and he must bear the consequences of his counsel’s decision not to press the matter further.

 This is appropriate here because, given the trial judge’s total rejection of the testimony of Marsh and his witnesses, it seems fair to assume she credited the flatly contrary testimony of Cassidy and Mark.

 Marsh argues to this Division: “Properly installed heating systems do not shut down when one heating zone is turned off.” That clear, definite, and plausible-sounding statement is, however, not supported by any citation to the record, such as affidavit, deposition, or trial testimony.

 At trial and before this Division, Cassidy has argued that Lopes received verbal approval for the electric work from the town inspector, but the written record, including an e-mail from the town inspector, seems to prove that, whatever Cassidy and Lopes’s subjective belief may have been, the wiring had not passed inspection.

 At argument, Marsh’s counsel argued that it would be impossible to sell a house with wiring that had failed inspection. Counsel conceded, however, that there is no record evidence that Marsh’s house here was for sale or that he had or was likely to incur any such loss as a result of the failure here.

 Marsh’s G.L.c. 93A claim is based on breach of the “warranty” in the contract that Cassidy would “pull all permits [and] stand inspection.” Breach of warranty is a per se violation of G.L.c. 93A, but an aggrieved party must still show causation of an injury. McCann, supra at 561; Lord v. Commercial Union Ins. Co., 60 Mass. App. Ct. 309, 321-322 (2004). Marsh’s failure to show that the lack of successful inspection caused him injury, discussed above, is thus fatal to his G.L.c. 93A claim.